UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
YEKATERINA SKIDANENKO,
on behalf of herself and all others
similarly situated,

                                  Plaintiff,

                  - against -

EQUINOX HOLDINGS, INC. and ABC
CORPORATION 1-25 (fictious parties)

                                  Defendant.
--------------------------------------------------------------------X

20-cv-01550 (WFK) (RLM)

**AMENDED COMPLAINT**

**FLSA COLLECTIVE**

**CLASS ACTION**

Plaintiff Yekaterina Skidanenko ("Skidanenko" or "Plaintiff"), by and through her attorney, Jacob Aronauer of The Law Offices of Jacob Aronauer, complaining of Equinox Holdings, Inc. ("Equinox" or "Defendant"), alleges the following:

## NATURE OF THE ACTION

1.    This is class action brought by Plaintiff on behalf of herself and all other similarly situated Tier 1 and Tier 2 personal trainers at Equinox's New York locations to recover unpaid minimum wages, spread of hours and overtime compensation under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), as well as damages for violations of the wage statement requirements of the NYLL.

2.    Plaintiff and similarly situated non-exempt personal trainers work or have worked as Tier 1 and Tier 2 personal trainers for Equinox.

3.    This class action is brought on behalf of all Tier 1 or Tier 2 personal trainers who work or worked on behalf of Defendant (the "Rule 23 Personal Trainer Class") to seek unpaid

minimum wages, spread of hours wages and overtime wages, as well as statutory penalties for Defendant's failure to provide accurate wage statements.

4.  Plaintiff further brings this action on behalf of herself and all similarly situated current and former non-exempt Tier 1 and Tier 2 personal trainers (the "FLSA Collective") who elect to opt-in to this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.,* and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of both the unpaid overtime and minimum wage provisions of the FLSA by Defendant.

5.  Plaintiff and the FLSA collective and Rule 23 Personal Trainer Class worked as personal trainers for Equinox, an international chain of luxury fitness clubs with locations throughout New York.

6.  Plaintiff and her similarly situated co-workers were required to work "off the clock" on a daily basis by Equinox. That work included spending hours at the gym recruiting new clients on behalf of Equinox, creating work out programs for Equinox's clients, and traveling to and from Equinox mandated classes in other gym locations.

7.  Equinox has placed on notice that its practice and policy of requiring their trainers to work on their behalf without compensation was improper and in violation of the applicable law, yet, Equinox continued its practice. .

8.  At a minimum, Equinox accepts the benefit of their employees working on their behalf without compensating them for their labor.

9.  This action undertaken by Equinox— instructing their employees to work without paying them for their labor— is an undisputable violation of 29 CFR 785.11 which states that "Work not required but suffered or permitted is work is work time."

10.   Plaintiff and the Rule 23 Personal Trainer Class seek injunctive and declaratory relief against Defendant's unlawful actions, compensation for its failure to pay minimum wages, spread of hours wages and overtime wages and for its failure to provide accurate wage statements, and liquidated damages, compensatory damages, pre-judgment and post-judgment interest, and attorneys' fees and costs, as well as any and all other damages allowed pursuant to the FLSA and NYLL.

11.   Defendants ABC Corp. are fictitious names.  Plaintiff reserves her right to amend the Complaint as a result of pleading such fictitious parties.

## JURISDICTION AND VENUE

12.   This Court has jurisdiction over this action under 28 U.S.C. § 1331, 29 U.S.C. §§ 216(b)(c), and 217; and 28 U.S.C. § 1337.

13.   This Court has supplemental jurisdiction over the New York state law claims under the principles of pendent and ancillary jurisdiction.

14.   Venue is proper in this district under 28 U.S.C. § 1391(b)(c), because all or a substantial part of the events or omissions giving rise to the claims occurred herein.

## PARTIES

### Plaintiff

15.   Plaintiff is and was at all times relevant hereto an adult individual residing in Brooklyn, New York.

16.   Plaintiff was an employee of Defendant from on or about July 22, 2019 until officially January 2020.

17.   Plaintiff was employed by Defendant as a personal trainer at the Tier 1 level.

18.   Plaintiff was a covered employee within the meaning of the FLSA and the NYLL.

19.   As a result of the policies and procedures promulgated by Equinox, Plaintiff was compelled
      to work more than 40 hours each week for the benefit of Equinox, but was only paid for
      fraction of the hours worked.

**Defendant Equinox Holdings, Inc.**

20.   Equinox Holdings, Inc. is a luxury fitness company with its company mailing address at
      31 Hudson Yards, New York, NY 10001.

21.   On their website, Equinox claims to have 106 clubs across the world, including 40 in New
      York State.

22.   On information and belief, Equinox has (1) employees engaged in commerce or in the
      production of goods for commerce and handling, selling, or otherwise working on goods
      or materials that have been moved in or produced for commerce by any person; and (2) an
      annual gross volume of sales in excess of $500,000.00.

**ABC Defendants**

23.   ABC Defendants 1-25, said names being fictitious, are entities who may be subsidiaries of
      Equinox who partook in the aforementioned wage and hour violations but are as yet
      unknown or not necessarily yet germane to the allegations in the complaint.

## COLLECTIVE ACTION ALLEGATIONS

24.   The claims in this Complaint arising out of the FLSA are brought by Plaintiff on behalf of
      herself and other similarly situated persons who are current and former Tier 1 or Tier 2
      trainers of Defendant in New York since the date three years prior to the filing of this
      Complaint who elect to opt-in to this action (the "FLSA Collective").

25.   The FLSA Collective consists of conservatively 1,000 similarly situated current and former
      personal trainers who have been victims of Defendant's common policy and practices that

have violated their rights under the FLSA by, *inter alia*, willfully denying them overtime wages.

26. As part of its regular business practice, Defendant has intentionally, willfully and repeatedly harmed Plaintiff and the FLSA Collective by engaging in a pattern and/or policy of violating the FLSA. This policy includes, *inter alia*, the following:

    i.    failing to pay employees the applicable minimum wage rate for all time worked up to forty (40) hours per week;

    ii.    failing to pay employees the applicable overtime rate for all time worked in excess of forty (40) hours per week; and

    iii.    failing to keep accurate records of hours worked by employees as required by the FLSA.

27. Defendant has engaged in its unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation. As reflected by the fact that Equinox has repeatedly been sued for identical conduct, Defendant's unlawful conduct has been intentional, willful and in bad faith, and has caused significant damage to Plaintiff and the FLSA Collective.

28. The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendant, are readily identifiable and locatable through its records. These similarly situated employees should be notified of and allowed to opt into this action, pursuant to 29 U.S.C. § 216(b).

29. The FLSA and NYLL require that employers pay all employees at least one and one-half (1.5) times the employee's wage for all hours worked in excess of 40 during any workweek, unless they are exempt from coverage.

30.   Defendant failed to compensate Plaintiff and members of the FLSA Collective at one and
      one-half times the employee's wage for all hours worked in excess of 40 during any
      workweek.   The exact accounting of such discrepancy can only be determined upon
      completion of discovery.

31.   The FLSA require that employers pay all employees at least the applicable minimum wage
      rate for all hours worked up to 40 during any workweek, unless they are exempt from
      coverage.

32.   Defendant failed to compensate Plaintiff and members of the FLSA Collective at the
      applicable minimum wage rate for all hours worked up to 40 during any workweek.   The
      exact accounting of such discrepancy can only be determined upon completion of
      discovery.

33.   Defendant failed to compensate Plaintiff and members of the FLSA Collective with the
      appropriate spread of hours pay.   The exact accounting of such discrepancy can only be
      determined upon completion of discovery.

### THE RULE 23 PERSONAL TRAINER CLASS

34.   **Proposed Class.** The proposed class is comprised of all Tier 1 and Tier 2 personal trainers
      who worked for Defendant in New York state during the applicable period.

35.   Tier 1 and Tier 2 personal trainers all worked for Defendant at various locations and
      worked more than 40 hours per week.   These individuals though were not paid overtime
      for all work performed after 40 hours (the "Rule 23 Personal Trainer Class").

36.   The Rule 23 Personal Trainer Class is also not compensated for all hours worked at the
      applicable NYLL minimum wage.

37. Additionally, Defendant did not provide the Rule 23 Personal Trainer Class spread of hours pay when they worked 10 or more hours in a day.

38. Furthermore, Defendant did not provide the Rule 23 Personal Trainer Class with accurate wage statements.

39. Excluded from the Rule 23 Personal Trainer Class are employees of Defendant who are not Tier 1 or Tier 2 personal trainers as well as Defendant's legal representatives, officers, directors, assignors and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in any of the Defendant entities; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Personal Trainer Class.

40. **Ascertainability.** The identity of the Rule 23 Personal Trainer Class is readily ascertainable from Defendant's records, and class notice can be provided to all class members by means permitted by Rule 23 of the Federal Rules of Civil Procedure. To be effective, class notice should be provided not only through written communication to each class member's last known address as reflected in Defendant's records, but also through newspaper and radio announcements, workplace postings, and other alternative means of notice designed to reach this class of personal trainers. Many class members are no longer employed by Defendant, cannot be reached at the last known address in Defendant's records.

41. **Numerosity.** The size of the class makes a class action both necessary and efficient. The size of the class consists of conservatively 2,000 employees. Members of the class are ascertainable but so numerous that joinders are impracticable.

42.   **Common Questions of Law and Fact.** This case poses common questions of law and fact

affecting the rights of all class members, including:

a)   the policies, practices, programs, procedures, protocols, and plans of Defendant
regarding payment of overtime wage compensation;

b)   the policies, practices, programs, procedures, protocols, and plans of Defendant
regarding payment of minimum wage compensation;

c)   the policies, practices, programs, procedures, protocols, and plans of Defendant
regarding payment of spread of hours compensation;

d)   the policies, practices, programs, procedures, protocols, and plans of the Defendant of
requiring and/or accepting unpaid labor from its employees;

e)   Defendants' failure to provide accurate wage statements as required by NYLL, Article
6, § 195(3);

f)   what relief is necessary to remedy Defendant's unfair and unlawful conduct as herein
alleged.

43.   **Typicality.** The claims of the individual Plaintiff are typical of the claims of the class as

a whole.   Equinox's unlawful policies are typical of the unlawful wage policies and

practices that have and will continue to operate to deny other class members lawful

compensation.

44.   **Adequacy of Class Representation.**   The individual Plaintiff can adequately and fairly

represent the interests of the class as defined above, because her individual interests are

consistent with, and not antagonistic to, the interests of the class.

45.   **Propriety of Class Action Mechanism.** Defendant has implemented a series of unlawful

schemes that are generally applicable to the class, making it appropriate to issue final

injunctive relief and corresponding declaratory relief with respect to the class as a whole.

Class certification is also appropriate because the common questions of law and fact

predominate over any questions affecting only individual members of the class.   The

prosecution of separate actions against Defendant by individual class members would create a risk of inconsistent or varying adjudication, which would establish incompatible standards of conduct for Defendant. For all these and other reasons, a class action is superior to other available methods for the fair and efficient adjudication of the controversy set forth in this complaint.

46.   This action is properly maintainable as a class action under Federal Rule of Civil Procedure ("FRCP") 23(b)(3).

## FACTS

### Equinox

47.   Equinox is an American luxury fitness company.

48.   Equinox has 300 locations throughout the United States as well as Canada and England.

49.   The global headquarters of Equinox is in New York City.

50.   Memberships at Equinox are expensive with memberships ranging from $185 to $300 a month.

51.   On information and belief, a significant source of income for Equinox are personal training sessions.

52.   On information and belief, personal training sessions at Equinox start at $110 per hour and can be as expensive as $160.

53.   The price of personal training sessions at Equinox is higher for personal trainers with higher tiers.

54.   For example, sessions with Tier 1 trainers cost $110, sessions with Tier 2 trainers cost $120.

### Trainers at Equinox

55.  Equinox has, on numerous occasions, taken advantage of its trainers, working them to the brink and not fully compensating them for their labor.  Equinox has a policy of requiring (or at a minimum accepting the benefit of this labor without remuneration) their trainers to stay on the floor throughout the day without compensating them for their labor.

### Prior Lawsuits by Trainers Against Equinox

56.  The policy of Equinox requiring their trainers—whether written or implicit—to work additional uncompensated time on the floor has led to numerous lawsuits against Equinox.

57.  On information and belief, Equinox has been sued by their trainers for unpaid wages at least 5 times.

### Work Schedule and Salary of Trainers at Equinox

58.  When an employee is hired at Equinox, they are required to undergo approximately 4 weeks of training.

59.  On information and belief, for this training Equinox pays their employees the New York State minimum wage.

60.  In the course of training, Equinox repeatedly stresses to their new trainers the importance of "being out on the floor", "making contacts with potential clients" and, overall, using the floor as a mechanism to obtain new clients for training sessions.

61.  Trainers have to login to an Equinox database through the Equinox website, where they will access their schedule, Equinox e-mail, training session plans and Equinox fitness training institute ("EFTI") homework.

62.  Trainers do not have control of the schedule of their floor shifts, EFTI or other team meetings.

63.   This in turn results in trainers essentially being forced to stay at their respective gym and work additional time on the floor.  For example, a one-hour team meeting may be at 10 am and a floor shift beginning at 2pm.  For at least a portion of the 11am to 2pm the Trainer will—as encouraged by Equinox—to use the "down time" to stay on the floor and try to recruit new personal training clients for Equinox.

64.   On information and belief, Equinox creates an erratic schedule of paid work to ensure that trainers will remain on the premises and therefore were essentially forced to remain on the floor and obtain new clients.  At a minimum, whether intentional or inadvertent, this leads to trainers working additional hours, which hours are unpaid.

65.   As a result, it is not unusual for trainers to work 10 hours or more at minimum wage but not be paid the required spread of hours law.

66.   After the training is completed there are three separate ways Equinox pays their employees.

**Floor Shifts**

67.   First, for a "floor shift" Equinox pays their staff the New York minimum wage.

68.   For a floor shift, the Tier 1 and Tier 2 trainers will return weights to the weight rack, wipe machines and, as discussed earlier, interact with Equinox patrons in the hopes of obtaining personal training sessions.

69.   Floor shifts are supposed to last exactly 3 hours.

70.   Tier 1 trainers will usually work 5 floor shifts (1 per day) a week.

71.   Tier 2 trainers will usually work 2-4 floor shifts (1 per day) a week.

72.   In these floor shifts Equinox trainers are required to wear a light gray shirt. The word "Train" is on the front of the shirt with the Equinox logo on the back of the shirt.

73.     The light gray shirt signifies to the Equinox customers that these trainers are available to
be asked questions and advice.

74.     For example, a trainer may ask a patron if they want a "spot" for a bench press or
voluntarily offer a critique of a patron's form.

75.     A trainer clocks in to start their floor shift and clocks out at the end of their floor shift.

76.     A trainer, though, is strongly encouraged to be on the floor—in their light gray shirt —
both before and after the floor shift.

77.     Thus, even though the respective trainer is off the "clock", because they are on the floor
and still in Equinox uniform, they will continue to interact with customers and try to get
business on behalf of Equinox along with the other floor duties they perform on behalf of
Equinox.

78.     Equinox managers encourage the trainers to work on the floor in between paid work
assignments when they are not officially on "the clock."

### Meetings and Training Sessions

79.     All Tier 1 and Tier 2 trainers are required to attend the EFTI meetings.

80.     For the EFTI meetings, trainers are paid the New York minimum wage.

81.     EFTI meetings are held approximately twice a week.

82.     The EFTI meetings happen at either the Tribeca or Williamsburg location where trainers
throughout NYC are required to attend.

83.     Trainers, though, are not paid for traveling to these locations.

84.     At the EFTI meetings, Equinox would remind the trainers the importance of being out on
the floor as much as possible to obtain new clients.[1]

---

[1] The importance of being out on the floor to obtain new clients is also emphasized to their staff in individual "one on one" meetings.

85.   In addition, trainers are required to have team meetings with the entire gym they are assigned along with individual team meetings.

86.   At all of the above referenced meetings, Equinox management emphasizes the importance of being on the floor and getting new clients.

87.   For all of the meetings discussed above, Equinox would pay the trainers minimum wage.

88.   For some of the training sessions, staff is required to leave their main location to head to a different facility.

**Personal Training Sessions**

89.   For personal training sessions, trainers wear a dark grey t-shirt signifying that they should not be spoken to by patrons because they are engaged in a training session.

90.   Equinox pays the trainers a higher hourly salary when they have personal training sessions. The amount of pay depends on the respective trainers' level of experience.

91.   For these sessions, Equinox requires the trainers to block off time to prepare for training sessions.

92.   For this preparation time, though, Equinox does not pay the trainers even though they knew, and affirmatively encouraged their trainers to perform work on behalf of Equinox.

93.   Equinox would block out approximately 6 hours on a respective trainers' schedule to prepare for sessions. Equinox, though, does not pay trainers for time spent preparing for training sessions.

**Plaintiff Yekaterina Skidanenko's Employment at Equinox**

94.   Plaintiff Yekaterina Skidanenko worked as a Tier 1 personal trainer at the Brooklyn Heights Equinox location.

95.   Plaintiff was hired by Equinox on or about July 22, 2019.

96. Plaintiff's first day of work was on or about July 23, 2019.

97. Plaintiff's last official day of work, due to an injury, was October 29, 2019.

98. On January 12, 2020 Equinox informed Plaintiff via e-mail that her employment was terminated.

99. As a result of her termination, Plaintiff lost access to her paystubs and Equinox email address.

100. For the first four weeks of Plaintiff's employment, Plaintiff was in Equinox training program.

101. With respect to these 4 weeks of training, Plaintiff was paid the New York minimum wage and  was paid for all hours worked.

102. Starting on or about the beginning of August 2019, Plaintiff began working as a Tier 1 personal trainer for Defendant.

103. As a personal trainer, Plaintiff usually worked at Equinox 7 days per week.

104. On weekdays, Plaintiff usually arrived at work between 5:30am and 7am, and would leave on average at around 9pm.  Sometimes, though, Plaintiff would stay as late as 10pm or 11pm.

105. Plaintiff worked on average a minimum of 10 hours a day during the week.

106. On weekends, Plaintiff would usually arrive at 7am and would leave between 1pm and 3pm. On weekends, Plaintiff again was on the floor performing the same tasks that she did during floor shifts.

107. Plaintiff was only paid for a portion of her labor at Equinox, namely for floor sessions, training at Equinox Fitness Training Institute ("EFTI"), meetings and personal training sessions.  The remainder of the hours plaintiff worked were uncompensated.

108. Thus, Plaintiff was unpaid for most hours of her employment, including: recruiting personal training clients for Equinox, designing training programs for those clients assigned to her, and traveling to and from EFTI, which courses were held in a Manhattan location.

109. During floor shifts, Plaintiff would put back weights and remove mats and towels from the floor.

110. On the floor, Plaintiff would help patrons and answer their questions and recruit patrons for training sessions.

111. Plaintiff was assigned approximately 5 floor shifts per week.

112. Plaintiff had between approximately 2-3 EFTI sessions per week and they lasted approximately 2 hours.

113. These EFTI sessions were not in the Brooklyn Heights location, but were located instead usually in Tribeca, and sometimes in Dumbo.

114. Plaintiff would travel from the Brooklyn Heights location to attend the EFTI sessions, and would travel back to the Brooklyn Heights location once these sessions were concluded.

115. Plaintiff was not compensated for her travel time to and from the EFTI sessions.

116. EFTI sessions also had "homework" that had to be completed by the trainers. The time that trainers spent completing "homework" was uncompensated.

117. Plaintiff also was required to attend Ramper Meetings, which were specifically for Tier 1 and Tier 2 trainers.

118. During Ramper Meetings, Tier 1 and Tier 2 trainers would be told how to more effectively recruit clients.

119. Ramper Meetings were held two times per week, for one hour each.

120.  Plaintiff was also required to attend one hour-long meeting per month for all employees of the Brooklyn Heights location.

121.  Similar to the Ramper Meetings it was emphasized to Plaintiff, by the management at Equinox that she should be on the floor as much as possible to obtain clients.

## Scheduling at Equinox

122.  Plaintiff had a login to an Equinox database through the Equinox website, where she could access her schedule, Equinox email, training session plans and EFTI homework.

123.  Plaintiff could not control the schedule of her floor shifts, EFTI or the meetings.

124.  John Jenkins and Emiliano Tramontozzi were the managers of the personal trainers.

125.  Jenkins and Tramontozzi organized the schedules of the Tier 1 and Tier 2 trainers.

126.  Plaintiff coordinated her personal training sessions around her scheduled floor shifts, EFTI and meetings and around her clients' availability.

127.  Given these scheduling constrictions, there were approximately only 4 days throughout her entire employment when she did not attend work.

128.  Upon information and belief, personal trainers who were Tier 3 and higher were not assigned floor shifts.  In addition, these personal trainers did not have to attend Ramper Meetings.

129.  These same scheduling restrictions that Plaintiff experienced also apply to all other Tier 1 and Tier 2 trainers, meaning that other Tier 1 and Tier 2 trainers, with only narrow exceptions, did not have any influence on their own schedules. .

130.  By giving employees such erratic schedules of paid hours, Defendant ensures that trainers will be compelled to remain on the premises and perform unpaid floor shifts.

131.    Plaintiff complained about the erratic shifts which resulted in many hours of uncompensated work time. As a result of her complaint, she was orally reprimanded by one of her managers.

132.    During that reprimand, Plaintiff was encouraged to spend more time preparing for her personal training sessions (unpaid labor) and more time recruiting new personal training clients on behalf of Equinox (unpaid labor)

133.    As the other class members, Plaintiff's uniform consisted of two shirts, a dark gray and a light gray, both with the word "TRAIN" on the front and with the Equinox logo on the back.

134.    Plaintiff wore the dark gray shirt during training sessions, indicating that she was working with a client and therefore should not be approached by other gym patrons.

135.    Plaintiff was to wear the light gray shirt during floor shifts, indicating that she was available to help patrons.

136.    Between floor shifts, meetings and personal training sessions, Plaintiff generally wore her light gray shirt and would frequently work on the floor but would not be paid for her labor.

137.    Specifically, Plaintiff would perform the same tasks that she would perform on her floor shifts. This included, but was not limited to, returning weights, removing used towels and recruiting patrons to be her clients.

138.    Plaintiff partook in this task because she was compelled by management to recruit clients when she was not being paid by Equinox.

139.    Indeed, when Plaintiff was not meeting expectations of personal training sessions, one of Plaintiff's supervisors, Emiliano Tramontozzi, performance improvement plan including

instructing Plaintiff to be on the floor more. Yet, Plaintiff was not being compensated for that time.

140.    When Plaintiff failed to recruit a client, Plaintiff's supervisor, Emiliano Tramontozzi, would ask Plaintiff whether Plaintiff had been practicing what he had been telling her to do in the Ramper Meetings, specifically whether she was practicing the recommended techniques for recruiting clients, which included a written "speech" to be recited to the clients

141.    Plaintiff was instructed to learn that technique on her own time.

142.    Plaintiff blocked out preparation time to prepare for training in her schedule on the Equinox system but, consistent with the class, was not paid for this labor

143.    Plaintiff would prepare for her sessions approximately 6 hours per week.

**Plaintiff's Wages**

144.    Plaintiff was paid New York State minimum wage of $15 for floor shifts, training hours and team meetings.  However, Plaintiff was not paid for travel time to attend meetings at Equinox's Manhattan locations.

145.    Plaintiff, as a Tier 1 trainer, was paid $26 per hour for her training sessions.

146.    Plaintiff consistently worked more than 40 hours per week.

147.    On average, as is set forth in more detail above, Plaintiff worked sixty to sixty five hours (or more) a week.

148.    Plaintiff's effective rate of pay as a result was less than the Federal minimum wage rate of $7.25 per hour.

149.    In addition, Plaintiff's effective rate of pay was less than the New York state minimum wage rate.

150.   By way of example but not limitation, in the last two weeks of September, Plaintiff was paid a total $930.55 making her effective wage rate of $7.15.

151.   That rate is less than the minimum Federal wage rate.

152.   Even though Plaintiff worked more than 40 hours a week, Plaintiff was never paid time and one half.

153.   In addition, Plaintiff frequently worked 10 hours or more in a day.  Plaintiff, though, was not provided an additional hour's pay as required under New York's spread of hour law.

**<u>Defendant's Violations of the Wage Theft Protection Act</u>**

154.   The NYLL and Wage Theft Prevention Act require employers to provide all employees with accurate wage statements.

155.   Throughout the relevant time period, Defendant paid Plaintiff and the Rule 23 Personal Trainer Class wages without an accurate statement listing the number of hours they worked.

**FIRST CAUSE OF ACTION**
**FLSA Minimum Wage Violations, 29 U.S.C. §§ 201, *et seq.***
**<u>(On Behalf of Plaintiff and the FLSA Collective)</u>**

156.   Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

157.   Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Complaint.

158.   At all times relevant, Plaintiff was employed by an entity engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*, and/or Plaintiff was engaged in commerce and/or the production or sale of goods for

commerce within the meaning of 29 U.S.C. § 203.  At all relevant times, each Defendant has employed "employee[s]," including Plaintiff.

159.    Defendants were required to pay directly to Plaintiff the applicable federal minimum wage rate for all hours worked.

160.    Defendants failed to pay Plaintiff the minimum wages to which he was entitled under the FLSA.

161.    Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional.  Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.  Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs.

162.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et. seq.*

163.    As a result of Defendants' willful violations of the FLSA, Plaintiff has suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 et seq.

## SECOND CAUSE OF ACTION
### Unpaid Minimum Wages Under New York Labor Law
### (On Behalf of Plaintiff and the Rule 23 Class)

164.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

165.    Defendant has engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Complaint.

166. At all times relevant, Plaintiff and the Rule 23 Personal Trainer Class have been employees of Defendant, and Defendant has been the employer of Plaintiff and the Rule 23 Personal Trainer Class within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

167. At all times relevant, Plaintiff was covered by the NYLL.

168. The wage provisions of Article 19 of the NYLL and the supporting New York State Department of Labor Regulations apply to Defendant, and protect Plaintiff and the Rule 23 Personal Trainer Class.

169. Defendant failed to pay Plaintiff and the Rule 23 Personal Trainer Class the minimum hourly wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

170. Through its knowing and intentional failure to pay minimum hourly wages to Plaintiff and the Rule 23 Personal Trainer Class, Defendant has willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

171. Due to Defendant's willful violations of the NYLL, Plaintiff and the Rule 23 Personal Trainer Class are entitled to recover from Defendant unpaid minimum wages, liquidated damages as provided by the NYLL, reasonable attorneys' fees, costs and pre-judgment and post-judgment interest.

### THIRD CAUSE OF ACTION
#### FLSA Overtime Violations, 29 U.S.C. §§ 201, *et seq.*
#### (On Behalf of Plaintiff and the FLSA Collective)

172. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

173. Throughout the relevant time period, Plaintiff and the FLSA Collective worked in excess of forty (40) hours per workweek.

174. At all relevant times throughout the employment of Plaintiff and the FLSA Collective, Defendant willfully, regularly and repeatedly failed to pay Plaintiff and the FLSA Collective one and one-half times the regular hourly rate of pay for work in excess of forty (40) hours per workweek, and willfully failed to keep records required by the FLSA, even though Plaintiff and the FLSA Collective were entitled to receive overtime payments.

175. Defendant's decision not to pay overtime was willful.

176. Plaintiff and the FLSA Collective seek damages in the amount of unpaid overtime compensation, liquidated damages as provided by the FLSA for overtime violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**Unpaid Overtime Wages Under New York Labor Law**
**(On Behalf of Plaintiff and the Class)**

177. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

178. At all times relevant to this action, Plaintiff and the Rule 23 Personal Trainer Class were employed by Defendant within the meaning of NY Labor Law § 652 and 12 NYCRR §142-2.2.

179. Defendant failed to pay Plaintiff and the Rule 23 Personal Trainer Class the overtime premium of one and a half times the regular hourly rate of pay, in violation of the NY Labor Law.

180. Defendant's failure to pay required overtime was willful.

181.   As a result of Defendant's NY Labor Law violations, Plaintiff and the Rule 23 Personal Trainer Class are entitled to recover from Defendant unpaid overtime wages and liquidated (double) damages, as well as reasonable attorneys' fees and the costs of this action, including interest, pursuant to the NY Labor Law.

## FIFTH CAUSE OF ACTION
### Unpaid Spread of Hours Wages Under the New York Labor Law
### (On Behalf of Plaintiff and the Class)

182.   Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

183.   At times, Plaintiff and the Rule 23 Personal Trainer Class worked more than ten (10) hours in a workday.

184.   Defendant willfully failed to compensate Plaintiff and the Rule 23 Personal Trainer Class one hour's pay at the basic New York minimum hourly wage rate on days in which the length of her workday was more than ten hours, as required by New York law.

185.   Through their knowing or intentional failure to pay Plaintiff and the Rule 23 Personal Trainer Class spread-of-hours pay, Defendant has willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

186.   Due to Defendant's willful violations of the NYLL, Plaintiff and the Rule 23 Personal Trainer Class entitled to recover from Defendant their unpaid spread-of-hour wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## SIXTH CAUSE OF ACTION
### Failure to Provide Wage Statements Under the New York Labor Law
### (On Behalf of Plaintiff and the Class)

187.   Plaintiff, on the behalf of herself and the Rule 23 Personal Trainer Class, re-alleges and incorporates by reference all allegations in all preceding paragraphs.

188.    Defendants willfully failed to supply Plaintiff and the Rule 23 Personal Trainer Class with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

189.    Through their knowing or intentional failure to provide Plaintiff and the Rule 23 Personal Trainer Class with accurate wage statements as required by the NYLL, Defendants willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Relations regulations.

190.    Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiff and the Rule 23 Personal Trainer Class are entitled to statutory penalties of two hundred and fifty dollars for each work day that Defendants failed to provide Plaintiff and the Rule 23 Class with accurate wage statements, or a total of five thousand dollars, reasonable attorneys' fees, costs and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

## SEVENTH CAUSE OF ACTION
### (Failure to Pay Earned Wages in Violation of New York Labor Law

191.    Plaintiff, realleges and incorporates by reference all allegations in all preceding paragraphs.

192.    At all relevant times, Plaintiff was an "employee" within the meaning of the New York labor Law.

193.    Similarly, at all relevant times, Defendants, including the individually named Defendants, were "employers" within the meaning of the New York Labor Law.

(j)  For the costs and disbursements of this action, including attorneys' fees and expenses; and

(k)  For such other further and different relief as this Court deems just and proper.

Dated: July 12, 2020
New York, New York

**THE LAW OFFICES OF JACOB ARONAUER**

By:   */s/ Jacob Aronauer*
Jacob Aronauer (JA: 9184)
225 Broadway, 3rd Floor
New York, NY 10007
Telephone:    (212) 323-6980
Facsimile:     (212) 233-9238
jaronauer@aronauerlaw.com

*Attorney for Plaintiff*